**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CEDRIC GILMORE,

                Petitioner,                Case Number: 2:07-CV-14010

v.                                    HONORABLE PAUL D. BORMAN
                                            UNITED STATES DISTRICT JUDGE

BLAINE LAFLER,

                Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND (2) DENYING CERTIFICATE OF APPEALABILITY

Petitioner Cedric Gilmore filed a petition for a writ of habeas corpus under 28 U.S.C. §

2254. He is currently incarcerated at the Ryan Correctional Facility in Detroit, Michigan and

challenges his convictions for first-degree murder, assault with intent to commit murder, armed

robbery, felon in possession of a firearm, and possession of a firearm during the commission of a

felony. For the reasons set forth below, the Court denies the petition.

## I. Facts

The Michigan Court of Appeals set forth the facts relevant to Petitioner's convictions as

follows:

> Defendant's convictions arise from the shooting death of Rashawn Coleman ("the
> victim") and the armed robbery and nonfatal shooting of Drew Montgomery in
> Detroit. Montgomery testified that, on September 23, 2002, he and the victim
> were sitting in the victim's living room listening to music when defendant
> arrived. Defendant stayed for a while, then left the house and returned a few
> minutes later with a gun. Defendant shot the victim, and then pointed the gun at
> Montgomery, demanding money. Montgomery gave defendant $2,000 cash, and
> defendant shot the victim again before shooting Montgomery.
>
> Montgomery went downstairs to the basement where Marcellas Alexander and

Timothy Salter were performing some remodeling for the victim, and Alexander called the police. When the police arrived, the victim was still alive. Either Alexander or the police asked the victim who shot him, but he was unable to make a sound and only moved his lips. When asked if he had mouthed "Bald Head," the victim nodded his head "yes." Alexander asked the victim if he had mouthed "Raw Head," and the victim again nodded his head "yes." "Raw Head" is defendant's nickname. Two days after the shooting, the police prepared a photographic array for Montgomery, who viewed it while he was hospitalized. Montgomery selected defendant's photograph without hesitation.

Defendant testified at trial and admitted that he was involved in the drug trade, along with Alexander, who was a good friend. Before going to prison in 1993, decedent claimed he left a large amount of cocaine with other people, anticipating that the drugs would be sold or distributed and he would receive some of the profits from Alexander. Defendant claimed that he never received payment, but Alexander denied owing him any money.

*People v. Gilmore*, No. 258334, 2006 WL 744268, at *3 (Mich. Ct. App. March 23, 2006)

(concurring opinion, adopted by majority, except with respect to § IV.B.2).

## II. Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of first-degree premeditated murder, first-degree felony murder, assault with intent to commit murder, armed robbery, felon in possession of a firearm, and felony-firearm. On September 30, 2004, the trial court sentenced him as follows: life imprisonment without possibility of parole for the first-degree felony murder and premeditated murder convictions, which were merged, life imprisonment for the assault with intent to murder and armed robbery convictions, one to five years' imprisonment for the felon-in-possession conviction, and two years' imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

I.    Appellant was denied the effective assistance of counsel in the following ways:

1.     Counsel adopted an unreasonable strategy in which he supplied his client's motive for the crime, proved that his client knew the deceased, proved that his client had been to the deceased's home before, and offered other irrelevant and highly prejudicial evidence against his own client;

2.     Counsel failed to object to prosecutorial misconduct;

3.     Counsel failed to object to evidence indicating that Mr. Gilmore was in custody;

4.     Counsel failed to move to sever the felon in possession charge, failed to *voir dire* on the charge and failed to request a limiting instruction on the use the jury could make of the evidence of a prior conviction;

5.     Counsel failed to renew his motion to suppress the alleged dying declaration after testimony was offered which showed that the victim was reassured that he was going to be all right, and he failed to contend that a statement that had to be interpreted by another loses any indicia of reliability;

6.     Counsel failed to call Madelyn Jennings as a witness and failed to object to the admission of statements attributed to her as a violation of the right to confront and cross-examine witnesses under the Sixth Amendment.

II.     The trial court abused its discretion at sentencing by enhancing defendant's sentence using factors already scored in the guidelines.

III.     Appellant's Sixth Amendment right to confront the witnesses against him was violated when the trial court over objection admitted testimony concerning a statement from the victim, allegedly identifying the appellant as his assailant where the victim later died.

IV.     The trial court denied appellant due process of law when it found that the identification procedure was not impermissibly suggestive and the trial court also denied appellant the right to counsel at the *Wade* hearing.

V.     Prosecutorial misconduct denied appellant a fair trial in the following ways:

1.     The prosecutor shifted the burden of proof in her closing argument;

2.     The prosecution placed the jurors in the same position as the complainant during *voir dire*;

3.     The prosecutor used the defendant to comment on the credibility of his

chief accuser; and

4.      The prosecution called a rebuttal witness who offered irrelevant and
        unfairly prejudicial evidence against the defendants.

The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v. Gilmore*,

No. 258334, 2006 WL 744268 (Mich. Ct. App. March 23, 2006).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising

the same claims presented to the Michigan Court of Appeals.  The Michigan Supreme Court

denied leave to appeal.  *People v. Gilmore*, 477 Mich. 873 (Mich. Sept. 27, 2006).

Petitioner then filed the pending petition for a writ of habeas corpus.  He raises the

following claims:

I.      The Court should grant the habeas writ because Petitioner was denied the
        effective assistance of counsel guaranteed under the Sixth Amendment.

II.     Petitioner's Sixth Amendment right to confront the witnesses against him was
        violated when the trial court over objection admitted testimony concerning a
        statement from the victim who later died allegedly identifying the Petitioner as his
        assailant.

III.    The trial court denied Petitioner due process of law when it found that the
        identification procedure was not impermissibly suggestive and also denied
        appellant the right to counsel at the *Wade* hearing.

### III.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an
        unreasonable application of, clearly established Federal law, as
        determined by the Supreme Court of the United States; or

(2)       resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual
determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state
court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law
or if the state court decides a case differently than the Supreme Court has on a set of materially
indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable
application occurs" when "a state-court decision unreasonably applies the law of [the Supreme
Court] to the facts of a prisoner's case."  *Id.* at 409.  A federal habeas court may not "issue the
writ simply because that court concludes in its independent judgment that the relevant state-court
decision applied clearly established federal law erroneously or incorrectly.  Rather, that
application must also be unreasonable."  *Id.* at 410-11.

## IV.  Analysis

### A.  Alleged Ineffective Assistance of Counsel

In his first claim for habeas corpus relief, Petitioner argues that his trial attorney was
ineffective in the following ways: (i) adopting an unreasonable trial strategy which involved
exposing to the jury a motive for Petitioner to commit the crime, connecting Petitioner to the
victim, and placing before the jury prejudicial testimony regarding Petitioner's involvement with
illegal drug trafficking; (ii) failing to object to prosecutorial misconduct; (iii) failing to object to
testimony that Petitioner previously had been incarcerated; (iv) failing to move to sever the
felon-in-possession charge, to conduct *voir dire* on that charge, and failing to request a limiting

instruction; (v) failing to renew motion to suppress dying declaration; and (vi) failing to call Madelyn Jennings as a witness.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[T]he focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" *Tinsley v. Million*, 399 F.3d 796, 802 (6th Cir. 2005), *quoting Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

## 1. Trial Strategy

Petitioner argues that trial counsel's defense strategy was unreasonable where it required Petitioner to admit to being a drug dealer, knowing the victim, and having been in the victim's home, none of which had been proven by the prosecutor. Defense counsel sought to establish that Alexander had a motive for implicating Petitioner in the shooting. According to Petitioner, Alexander owed him a substantial amount of money from the sale of illegal drugs and could escape payment if he implicated Petitioner in the murder. Petitioner moved in the trial court for a new trial based, in part, on counsel's alleged ineffective assistance in pursuing this defense.

The trial court denied the motion, reasoning that, while the defense was not successful, it was not

an unreasonable strategy in light of the identification evidence presented at trial. The Michigan

Court of Appeals, on direct review, also held that counsel was not ineffective, holding, in

relevant part:

> "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v. Davis*, 250 Mich. App. 357, 368; 649 N.W.2d 94 (2002). We will not assess counsel's competence with the benefit of hindsight. *People v. Rice (on remand)*, 235 Mich. App. 429, 445; 597 N.W.2d 843 (1999). The fact that a particular strategy is not successful does not prove that counsel was ineffective. *People v. Matuszak*, 263 Mich. App. 42, 61; 687 N.W.2d 342 (2004).
>
> In this case, it is undisputed that someone shot and killed the victim, and shot and robbed Montgomery. The two items of evidence implicating defendant were Montgomery's identification and the victim's dying declaration to which Alexander was a witness. However, once the trial court denied defense counsel's motions to exclude these two items, defendant's options for attempting to show reasonable doubt became limited. Defense counsel's decision to accuse Alexander of framing defendant to avoid a drug debt was not unreasonable, given that defendant was facing mandatory life in prison for first-degree murder. Therefore, defendant has not overcome the presumption of sound strategy.

*Gilmore*, 2006 WL 744268, at *4.

While the introduction of evidence related to Petitioner's drug business and personal

connection to the victim arguably introduced information harmful to his case, it was not

unreasonable for counsel to risk introducing evidence incriminating Petitioner's character when

such evidence also had the potential to provide another explanation and motive for Alexander's

highly incriminating testimony. "[A] defense counsel's elicitation of damaging testimony does

not itself rise to the level of ineffective assistance." *Galloway v. U.S.*, 187 F. App'x 507, 510

(6th Cir. June 29, 2006), (*citing Campbell v. U.S.*, 364 F.3d 727, 734 (6th Cir. 2004); *Scott v.*

*Elo*, 302 F.3d 598, 607 (6th Cir. 2002)). *See also Urban v. Ohio Adult Parole Authority*, 116 F.

App'x 617, 622 (6th Cir. Nov. 18, 2004) (holding that defense counsel's cross-examination of prosecution witness, which eliminated incriminating testimony, was not ineffective because it was plainly an attempt by counsel to portray witness as biased).

Given the deferential standard of review under the AEDPA, the Court finds that the state court's decision that counsel's trial strategy in this regard was competent was a reasonable application of *Strickland*. Therefore, habeas relief is denied on this claim.

### 2. Failure to Object to Alleged Prosecutorial Misconduct

Petitioner argues that counsel was ineffective in failing to object to several instances of prosecutorial misconduct. Specifically, Petitioner argues that counsel should have objected to the following instances of alleged prosecutorial misconduct: (i) shifting the burden of proof; (ii) improper questioning during *voir dire;* (iii) asking Petitioner to comment on another witness's credibility; and (iv) failing to object to rebuttal testimony.

An ineffective assistance of counsel claim based on counsel's failure to object to prosecutorial misconduct "hinges on whether the prosecutor's misconduct was plain enough for a minimally competent counsel to have objected." *Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000). An attorney's failure to object is not ineffective where the prosecutor did not act improperly. *Finkes v. Timmerman-Cooper*, 159 F. App'x 604, 611 (6th Cir. 2005).

It is well-established that prosecutors must "'refrain from improper methods calculated to produce a wrongful conviction.'" *United States v. Young*, 470 U.S. 1, 7 (1985) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct may warrant

habeas corpus relief only if the misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "To constitute a denial of due process, the misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (internal quotation omitted). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (*quoting Serra v. Mich. Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The first question to consider is whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the Court must decide whether the improper acts were so flagrant as to warrant relief. *Id.* at 516. The Sixth Circuit applies a four-factor test to any inappropriate prosecutorial conduct to determine whether it was flagrant: "(1) whether the evidence against the defendant was strong, (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally." *Id.* (citation omitted).

Petitioner does not raise prosecutorial misconduct as a distinct claim in his petition, but he did raise it as a separate claim in state court. Therefore, the Court owes deference to the state court's determination of the prosecutorial misconduct claims. *See* 28 U.S.C. § 2254(d).

First, Petitioner argues that counsel was ineffective in failing to object when the prosecutor shifted the burden of proof by arguing in closing that there was no evidence that Petitioner was known as anything other than "Raw Head" and no testimony that anybody other

than Petitioner committed the crime.

It is improper for a prosecutor to shift the burden of proof to a defendant.  *See United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993).  A prosecutor is entitled to point out the lack of evidence supporting defense theories.  *U.S. v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005).  *See also United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir. 2002) (holding that the prohibition against commenting on a criminal defendant's silence "does not extend to a defendant's failure to call a witness or to otherwise present exculpatory evidence"); *Menendez v. Terhune*, 422 F.3d 1012, 1034 (9th Cir. 2005) ("A prosecutor may, consistent with due process, ask a jury to convict based on the defendant's failure to present evidence supporting the defense theory.").

The Michigan Court of Appeals held that, in this case, the prosecutor did not improperly shift the burden of proof, reasoning, in relevant part:

> [D]efendant advanced the theory that someone else committed the crime and presented some evidence in support of that theory, including his own testimony. The prosecutor merely commented that the evidence failed to show what defendant posited, *i.e.*, to either exonerate defendant or show that someone else committed the crime.  The prosecutor made permissible comments on the evidence presented at trial, including its weight and credibility.  The comments did not improperly shift the burden of proof and did not deprive defendant of a fair trial.

*Gilmore*, 2006 WL 744268 at *15.

Because the prosecutor's conduct was not improper, the Michigan Court of Appeals held that counsel was not ineffective in failing to object.  *Id*. at *4.  The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts.  As noted by the state court, the prosecutor's argument properly countered the defense theory of the case.  Moreover, Petitioner has failed to show that he was prejudiced by the

comment given that the trial court instructed the jury about the burden of proof during trial. Jurors are presumed to follow the court's instructions. *See United States v. Newsom*, 452 F.3d 593, 604 (6th Cir. 2006). Petitioner has not established that the disputed remarks were improper or that those remarks deprived him of a fundamentally fair trial, therefore, counsel was not ineffective in failing to object.

Second, Petitioner argues that counsel was ineffective in failing to object to one of the prosecutor's lines of questioning during *voir dire*. The prosecutor explained to jurors that the case was one based upon an identification and asked whether any jurors would have a problem convicting based on one person's identification, that is, would they require the prosecutor to present more evidence than one person's identification. Certain prospective jurors indicated that they would require more than one person's identification testimony to render a guilty verdict. The prosecutor then asked one of those jurors whether, if she were the victim of a purse snatcher and the only witness, she would want the police and the jury to believe her even if no other evidence was presented.

The Michigan Court of Appeals held that the prosecutor's questions were proper because the questions were not an appeal to the jury to sympathize with the victim. The prosecutor "was merely attempting to ascertain that prospective jurors were not going to demand that she prove her case beyond all doubt, or to a moral certainty. She did not ask prospective jurors to place themselves in the victim's position." *Gilmore*, 2006 WL 744268, at *16. The Court agrees that the prosecutor's questions were a fair attempt to ascertain whether jurors would be capable of following the Judge's instructions and apply the proper burden of proof. The state court's decision was not contrary to or an unreasonable application of Supreme Court precedent.

11

Therefore, counsel was not ineffective in failing to object to proper questioning.

Third, Petitioner argues that counsel should have objected because the prosecutor asked him to comment on the credibility of Marcellas Alexander. The trial transcript shows that the prosecutor did not directly ask Petitioner to comment on Alexander's credibility. Instead, the prosecutor asked Petitioner whether he saw Alexander cry on the witness stand. Petitioner infers that this amounted to an improper request that he comment on Alexander's credibility. The Michigan Court of Appeals held that the question, while "test[ing] the bounds of propriety," did not deny Petitioner his right to a fair trial. *Id.* The Court finds this conclusion was not contrary to or an unreasonable application of Supreme Court precedent. Moreover, Petitioner fails to show that he was prejudiced by counsel's failure to object to the question.

Finally, Petitioner argues that counsel was ineffective in failing to object to the presentation of improper rebuttal evidence. On cross-examination of Petitioner, the prosecutor elicited testimony from Petitioner that he did not know a man by the name of George Pemberton, and that he had not spent any time with Pemberton on the day of the crime. The prosecutor then called Pemberton as a rebuttal witness. Pemberton testified that he and Petitioner smoked crack cocaine together several hours before the shooting. He had no knowledge of where Petitioner went after that. The Michigan Court of Appeals held that, because the testimony was not relevant to Petitioner's whereabouts at the time of the shooting, it was improper. The state court held, however, that Petitioner had not shown that he was prejudiced by counsel's failure to object to the improper testimony. The state court noted that the testimony did not implicate Petitioner in the shooting and, given the strength of the evidence against Petitioner, there was no reasonable probability that if counsel had objected the result of the proceeding would have been

different.  *Id.* at *4.   The Court finds that the state court's finding was not contrary to or an

unreasonable application of *Strickland*.   Therefore, the Court denies habeas relief on this claim.

### 3.  Failure to Object to Testimony that Petitioner Was Incarcerated

Petitioner argues that counsel should have objected when counsel elicited testimony from

a witness, Timothy Salter, that he had seen Petitioner in jail the previous day.  Salter was

responding to the prosecutor's question whether he knew Petitioner and would recognize him.

Salter testified he did not know Petitioner and only recognized him in court that day because he

had been in jail with him the previous day when he was detained for failure to appear in court.

The trial court held that counsel was not ineffective in failing to object to the brief,

isolated comment, and that, even if counsel should have objected, Petitioner failed to show

resulting prejudice.  The Court finds that this brief comment was not prejudicial and that the

court of appeals' decision was not contrary to or an unreasonable application of *Strickland*.

### 4.  Failure to Properly Handle Felon-in-Possession Charge

Petitioner next argues that defense counsel was ineffective in several ways regarding the

handling of the felon-in-possession charge.  He claims that counsel should have moved to sever

this charge, failed to *voir dire* on the charge, and failed to request a limiting instruction on the

use the jury could make of evidence of the prior conviction.

The Michigan Court of Appeals held that, under Michigan Court Rules, Petitioner was

not entitled to have the felon-in-possession charge severed because it arose from the same

conduct as the other offenses.  *Gilmore*, 2006 WL 744268 at *5, *citing* Mich. Ct. R. 6.131(B) &

6.120(B).  Because severance would not have been warranted under Michigan law, counsel was

not ineffective for failing to so move.

Petitioner argues that counsel was ineffective in failing to explore during *voir dire* whether jurors would be able to set aside the fact of Petitioner's prior conviction in deciding his guilt or innocence as to each of the charges. The Michigan Court of Appeals found counsel's trial strategy reasonable, holding, in relevant part:

> Before *voir dire*, the parties stipulated that defendant was a convicted felon and, therefore, ineligible to possess a firearm on the date of the offense. The court so informed the prospective jurors, adding that the only issue for trial concerning the felon-in-possession charge was whether defendant possessed a weapon on September 23, 2002. Defense counsel did not address the charge during *voir dire*. The decision whether to draw further attention to defendant's prior convictions during *voir dire* was a matter of trial strategy. Defendant has failed to show that counsel committed a serious error in failing to *voir dire* the jury on the issue. Further, in light of Montgomery's identification and the victim's dying declaration, defendant cannot show that this alleged error might have affected the outcome of the trial.

*Gilmore*, 2006 WL at 744268, at *5.

During *voir dire* all the seated jurors stated that they would be fair and follow the law as instructed by the court. Defense counsel's decision to rely on the jurors' statements that they could faithfully uphold their oaths rather than emphasizing his client's criminal history, was a reasonable tactical decision. *See Wilson v. Henry*, 185 F.3d 986, 991 (9th Cir. 1999) ("At *voir dire*, all jurors stated that they would be fair and would follow the law as instructed. Counsel's choice to rely on such a commitment, without emphasizing his client's criminal history, merits deference as a tactical decision.").

Finally, Petitioner argues that counsel was ineffective in failing to request a limiting instruction regarding the jury's use of the prior conviction. The Michigan Court of Appeals held that the decision whether to request a limiting instruction is generally a matter of trial strategy and that Petitioner failed to overcome the presumption of sound trial strategy. *Gilmore*, 2006

WL 744268, at *6.

The failure to request a limiting instruction does not, by itself, render counsel ineffective. *See Stamps v. Rees*, 834 F.2d 1269, 1276 (6th Cir. 1987). Courts have viewed counsel's decision not to request a limiting instruction as a wise tactical choice not to emphasize the prior conviction before the jury. *See e.g., Ferguson v. Knight*, 809 F.2d 1239, 1243 (6th Cir. 1987) (noting that "such instructions inevitably invite the jury's attention to matters the defendant normally prefers not to emphasize"); *Stamps v. Rees*, 834 F.2d 1269, 1276 (6th Cir. 1987) (failure to request jury admonition concerning permissible use of evidence of prior convictions did not constitute ineffective assistance "as it is quite evident that . . . counsel simply wanted to get past the prior convictions as quickly as possible without bringing undue attention to them"); *Biggerstaff v. Clark*, 999 F2d 1153, 1155 (7th Cir. 1993) ("[I]t would be reasonable for counsel to choose not to request a limiting instruction, making a tactical decision to forego the instruction to avoid further focus of the jury's attention on the unfavorable use that could be made of the evidence.").

Petitioner has failed to overcome the presumption that counsel's failure to request a limiting instruction was the result of wanting to de-emphasize the prior conviction, a sound trial strategy, nor has he shown that he was prejudiced by the omission. Therefore, habeas relief is denied.

### 5.  Failure to Renew Motion to Suppress

Petitioner argues that counsel was ineffective in failing to renew the motion to suppress the dying declaration after testimony was heard showing that the victim was reassured that he was going to be fine and in failing to argue that a statement that has to be interpreted by another loses an indicia of reliability.

The Michigan Court of Appeals held that counsel was not ineffective, reasoning that the nature of Coleman's injury, he was bleeding profusely from a gunshot wound in his chest, he was unable to speak and barely able to move his lips, allowed the court to infer the victim's knowledge that death was imminent.  *Gilmore*, 2006 WL 744268, at *6.  The Court finds the court of appeals' analysis reasonable.  The assurance given the victim by Alexander that he was going to be fine could not reasonably have been expected to persuade the victim, who was so gravely injured, that his death was not imminent.  Additionally, dying declarations, obviously, must be relayed by someone other than the decedent.  Therefore, that Coleman's dying words and gestures were relayed by an observer does not render them inadmissible.  The Michigan Court of Appeals' decision that counsel was not ineffective in failing to renew his objection was not an unreasonable application of *Strickland*.

### 6.  Witness Madelyn Jennings

Finally, Petitioner argues that counsel was also ineffective in failing to call the lineup attorney Madelyn Jennings as a witness and failing to object to the prosecutor's use of her statement in closing argument.  Police Officer Kenneth Gardiner testified that Jennings declared the photographic array to be fair and that she wrote on the attorney show-up sheet that Montgomery chose Petitioner without hesitation.

The Michigan Court of Appeals held that the decision not to call Jennings was reasonable trial strategy. If counsel had called Jennings and attempted to undermine her credibility in order to call into question the certainty and accuracy of Montgomery's identification, he would run the significant risk that Jennings would simply reaffirm her comment that the lineup was fair and that Montgomery's identification of Petitioner was swift and certain. Thus, the state court concluded that it was not unreasonable for counsel not to call Jennings and, because her testimony would have been cumulative of Gardiner's, Petitioner was not prejudiced by her absence at trial. *See Gilmore*, 2006 WL 744268, at *6-7.

The state court's application of *Strickland* was not unreasonable. Petitioner has given no indication that Jennings would have testified contrary to her written notes regarding the reliability of Montgomery's identification. Therefore, he has demonstrated no potential benefit to the defense if Jennings had been called to testify. The Court denies relief on this claim.

### B. Admission of Dying Declaration

In his second habeas claim, Petitioner argues the admission as a dying declaration of testimony that the victim mouthed the words "Raw Head" or "Bald Head" and nodded "yes" when asked if "Raw Head" was the person who shot him, violated Michigan Rule of Evidence 804(b)(2) and his Sixth Amendment right of confrontation.

It is well-established that "'federal habeas corpus review does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991), (*quoting Louis v. Jeffers*, 497 U.S. 764, 780 (1990)). The Sixth Circuit has held that "[i]n a habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 22, 22-23 (6th Cir. 1981). Therefore, Petitioner's claim that the

trial court violated Michigan Rule of Evidence 804(b)(2) is not cognizable on federal habeas review.

Petitioner's claim that admission of this testimony violated his rights under the Confrontation Clause is cognizable on habeas review. The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." *Id.* at 404-05 (internal quotation omitted). The right to a trial by jury is predicated upon the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" *Id.* at 405, (*quoting Turner v. State of Louisiana*, 379 U.S. 466, 472-73 (1965)).

In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the Supreme Court held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination regardless of whether the trial court finds the statements to be reliable. The Supreme Court, however, indicated that dying declarations may be an historical exception to the rule against admission of hearsay testimony:

> The one deviation we have found involves dying declarations. The existence of that exception as a general rule of criminal hearsay law cannot be disputed. . . . Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are. We need not decide in this case whether the

Sixth Amendment incorporates an exception for testimonial dying declarations. If this exception must be accepted on historical grounds, it is *sui generis*.

*Id.* at 56 n. 6.

The Supreme Court recognized this long-standing exception to the exclusion of testimonial dying declaration statements again in *Giles v. California*, ___ U.S. ___, 128 S.Ct. 2678, 2682-83 (2008) ("We have previously acknowledged that two forms of testimonial statements were admitted at common law even though they were unconfronted. The first of these were declarations made by a speaker who was both on the brink of death and aware that he was dying." (internal citation omitted)). Because the Supreme Court's refusal to decide the admissibility of dying declarations leaves the law not clearly established, the AEDPA standard precludes habeas relief. *Accord Martin v. Fanies*, No. 09-2269, 2010 WL 582614, * 2 (8th Cir. Feb. 19, 2010) (recognizing no clearly established Supreme Court precedent exists regarding the admissibility of dying declarations as an exception to the rule against hearsay); *Leighton v. Scribner*, No. CV 08-4552-GW, 2009 WL 6441470, *17 (C.D. Cal. Dec. 04, 2009) (same); *Nesmith v. Bradt*, No. 08-Civ-6546, 2009 WL 3189346, * 5 (S.D. N.Y. October 05, 2009) (same).

Moreover, even assuming *arguendo* that Petitioner's rights under the Confrontation Clause were violated, the error was harmless. Confrontation Clause errors are subject to harmless-error analysis. *See, e.g., Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Chapman v. California*, 386 U.S. 18, 21-22 (1967). In a habeas corpus proceeding, to determine whether a constitutional trial error is harmless, a federal court must decide whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), *quoting Kotteakos v. U.S.*, 328 U.S. 750, 776 (1946).

"This standard reflects the 'presumption of finality and legality' that attaches to a conviction at the conclusion of direct review." *Calderon v. Coleman*, 525 U.S. 141, 145 (1998), *quoting Brecht*, 507 U.S. at 633. "It protects the State's sovereign interest in punishing offenders and its good-faith attempts to honor constitutional rights, . . . while ensuring that the extraordinary remedy of habeas corpus is available to those whom society has grievously wronged." *Id.* (internal quotations omitted). If a federal judge in a habeas proceeding "is in grave doubt about whether a trial error of federal law has substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless. And, the Petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation omitted).

Factors to be considered in determining whether a Confrontation Clause error was harmless under *Brecht* include: "(1) 'the importance of the witness's testimony in the prosecution's case,' (2) 'whether the testimony was cumulative,' (3) 'the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points,' (4) 'the extent of cross-examination otherwise permitted,' and (5) 'the overall strength of the prosecution's case.'" *Vasquez v. Jones*, 496 F.3d 564, 574 & 574 n. 8 (6th Cir. 2007) (*quoting Van Arsdall*, 475 U.S. at 684).

The dying declaration was important to the prosecution's case, but not nearly as important as the identification testimony of Montgomery. Montgomery quickly and without hesitation identified Petitioner as the shooter. The dying delcaration was cumulative to and corroborated by Montgomery's testimony. The content of the dying declaration itself was corroborated by Alexander, Salter, and the police officer, whose testimony Petitioner was able to cross-examine extensively. Additionally, the prosecution's case was substantial even without

reference to the dying declaration. For these reasons, the Court concludes that any Confrontation Clause error did not have "substantial and injurious effect or influence in determining the jury's verdict," Brecht, 507 U.S. at 623. Accordingly, habeas relief is denied.

## C. Identification Testimony

Finally, Petitioner argues that Drew Montgomery's in-court identification of Petitioner should have been suppressed because the pretrial photo array was unduly suggestive where the participants were not similar enough in appearance to Petitioner. Additionally, Petitioner argues that he was denied his right to counsel at the *Wade* hearing.

"A conviction based on identification testimony that follows a pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994). A court must undertake a two-step analysis to determine the validity of a pretrial identification. First, the court must determine whether the procedure was unduly suggestive. If the court finds that the procedure was unduly suggestive, the court must then "evaluate the totality of the circumstances to determine whether the identification was nevertheless reliable." *Id.* Where an in-court identification was potentially impacted by an impermissibly suggestive pretrial identification procedure, the governing test is whether "under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Neil v. Biggers*, 409 U.S. 188, 199 (1972).

The Michigan Court of Appeals reviewed the photo array and found it was not unduly suggestive:

> [E]ach of the photographs depicted a bald, black male, in his 30s or 40s, with a
> mustache. There are no characteristics that substantially distinguish defendant
> from the other participants. Thus, the lineup is not unduly suggestive.
> Defendant's argument concerning the appearance of other lineup participants –
> that only one other person had a very thick mustache, and he was older than
> defendant, and that other participants had very large eyes – goes to the weight and
> not the admissibility of Montgomery's identification. Accordingly, the trial court
> did not err in denying defendant's motion to suppress Montgomery's
> identification of defendant's photograph.

*Gilmore*, 2006 WL 744268, at * 14.

A photographic array is impermissibly suggestive if "the picture of the accused, matching descriptions given by the witness, so stands out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit." *United States v. Thai*, 29 F.3d 785, 808 (2d Cir. 1994). *See also Schawitsch v. Burt*, 491 F.3d 798, 803 (8th Cir. 2007) ("Reasonable variations in hair length and facial hair are not impermissibly suggestive, especially as they can vary on any given person at different times."); *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986) ("It is not required that all of the photographs in the array be uniform with respect to a given characteristic.").

In habeas proceedings, a state court's factual findings are entitled to a presumption of correctness which the petitioner bears the burden of overcoming by "clear and convincing" evidence. *See* 28 U.S.C. § 2254(e)(1). The photographs of the lineup procedures do not overcome the presumption of correctness afforded the state court's factual findings regarding the similarity of the lineup participants. The participants appear to be reasonably similar in appearance to one another. Thus, the state court's analysis rejecting Petitioner's challenge to the suggestiveness of the photo array was not erroneous nor was it an unreasonable application of clearly established Supreme Court precedent, and habeas relief is denied.

Finally, Petitioner argues that he was constructively denied his right to counsel at the evidentiary hearing to challenge the constitutionality of the pretrial identification procedures pursuant to *United States v. Wade*, 388 U.S. 218 (1967).[1]  Petitioner argues that the trial court so limited counsel's ability to challenge the identification procedure as to effectively deny him the right to counsel under *United States v. Cronic*, 466 U.S. 648 (1984).  When a petitioner asserts ineffective assistance of counsel, a showing of prejudice is not required "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."  *Id.* at 659 n.25.

The Court has reviewed the transcript of the *Wade* hearing and finds that the trial court did not unfairly limit counsel's ability to cross-examine the detective who testified regarding the photo array procedure.  Counsel was given the opportunity for cross-examination and he undertook a competent cross-examination.  That certain of the prosecutor's objections were sustained and the trial court ultimately held that the lineup was not impermissibly suggestive does not mean that counsel's ability to challenge the identification was so impeded as to render him unable to act as counsel.  Therefore, this claim is denied.

## V.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

---

[1]  Although this claim was properly presented to the Michigan Court of Appeals and Michigan Supreme Court, neither state court addressed it.

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief. Therefore, the Court denies a certificate of appealability.

## VI. Conclusion

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: June 16, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 16, 2010.


S/Denise Goodine
Case Manager